1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Isagenix International LLC, et al.,          No. CV-25-01587-PHX-DGC

10                    Petitioners,               **ORDER**

11   v.

12   Noah Hodgin,

13                    Respondent.

14

15          Respondent Noah Hodgin brought a class action against Petitioners Isagenix

16   International LLC; Isagenix Worldwide, Inc. (collectively "Isagenix"); and Isagenix

17   corporate officers Sharron Walsh, Simon Davies, and Jim Dunlap in the Superior Court of

18   California, which defendants removed to the Central District of California (the "California

19   Class Action").  *See Hodgin v. Isagenix Int'l LLC*, No. 8:25-cv-00616-SRM-DFM.[1]

20   Isagenix and the individual defendants then filed a petition in this Court to compel

21   arbitration of Hodgin's claims asserted in the California Class Action.  Doc. 1.  The class

22   action has been stayed while this petition is resolved.

23          Hodgin moves to dismiss the petition, and Isagenix and the individual defendants

24   cross-move to compel arbitration.  Docs. 35, 39.  The motions are fully briefed and the

25   Court held oral argument on December 18, 2025.  The Court will compel arbitration and

26   deny the motion to dismiss.

27

28   ---
     [1] Hodgin also brought the class action against Isagenix founders Jim Coover and Kathy
     Coover, who are not parties to this petition to compel arbitration.  Doc. 13-4 at 2.

1    **I.    Background.**

2         Isagenix is a network marketing company.  It sells health-related products through

3    thousands of Associates who agree to its Policies and Procedures ("P&Ps") and related

4    documents.  Doc. 1 ¶¶ 5, 7.  The P&Ps state that Associates are independent contractors,

5    not employees, and are responsible for their own hours, working space, and business

6    expenses, among other terms.  Doc. 13-2 at 66.[2]

7         Noah Hodgin resides in California.  Doc. 35-1 ¶ 2.  He has a high school education

8    and obtained a certification in health and wellness from the Spencer Institute.  *Id.* ¶ 3.  His

9    work focuses primarily on coaching and personal training; he has no legal training.  *Id.*  In

10   September 2019, Hodgin entered into an online Agreement to become an Isagenix

11   Associate – a commission-based sales representative.  *See* Doc. 1 ¶¶ 5-6, 11.   The

12   Agreement included the P&Ps, the Isagenix Team Compensation Plan, and Guidance

13   Documents.  *See* Doc. 13-2 at 77.  Hodgin entered the Agreement to earn extra money.

14   Doc. 35-1 ¶ 4.  He previously had been an Isagenix Associate, but "de-activated" that

15   relationship before rejoining in 2019.  *Id.* ¶ 5; Doc. 1 ¶ 11 n.3.  Hodgin's California Class

16   Action alleges that Isagenix improperly classified him as an independent contractor rather

17   than an employee, in violation of California labor laws.  Doc. 35 at 10.  He asserts that

18   Isagenix owes him various employment benefits required by California statutes.

19        The P&Ps Hodgin accepted include the following arbitration agreement (the

20   "Arbitration Provision"):

21            ANY CONTROVERSY OR CLAIM ARISING OUT OF, OR RELATING
22            TO, THESE POLICIES AND PROCEDURES, THE COMPENSATION
23            PLAN, OR THE GUIDANCE DOCUMENTS, OR THE BREACH
             THEREOF, SHALL BE SETTLED BY CONFIDENTIAL ARBITRATION
24            ADMINISTERED    BY    THE    AMERICAN    ARBITRATION
             ASSOCIATION UNDER ITS COMMERCIAL ARBITRATION RULES,
25            AND   JUDGMENT   ON   THE   AWARD   RENDERED   BY   THE
26            ARBITRATOR  MAY  BE  ENTERED  IN  ANY  COURT  HAVING

27   _____
     [2] Citations throughout this order are to page numbers attached at the top of each page by
28   the Court's CMECF system.

- 2 -

JURISDICTION THEREOF. IF YOU FILE A CLAIM OR COUNTERCLAIM AGAINST ISAGENIX OR ITS OWNERS, DIRECTORS, OFFICERS OR EMPLOYEES, YOU MAY ONLY DO SO ON AN INDIVIDUAL BASIS AND NOT WITH ANY OTHER INDIVIDUAL OR AS PART OF A CLASS ACTION. YOU WAIVE ALL RIGHTS TO TRIAL BY JURY OR TO ANY COURT.

* * *

All arbitration proceedings shall be held in Maricopa County, State of Arizona, unless the laws of the jurisdiction where you reside expressly require the application of its laws, in which case the arbitration shall be held in the capital of that jurisdiction.

* * *

In the event that a dispute or claim arising out of, or relating to this Agreement, is not subject to arbitration as set forth above, the laws of the state of Arizona shall govern, and the parties agree that proper jurisdiction and venue shall be in the state and federal courts of Arizona.

* * *

If the laws of your place of residence impose any requirement that is different from or in addition to those set forth in these Policies, then these Policies shall be deemed amended in conformance with those laws as to that jurisdiction only.

Doc. 13-2 at 78-79 (capitalization in original).[3]

Isagenix argues that this provision requires Hodgin to arbitrate the claims he made in the California Class Action, and petitions this Court to compel the arbitration. Doc. 1 at 1-2. Hodgin opposes arbitration and asks the Court to dismiss the Isagenix petition so he can proceed with the California Class Action. Doc. 35 at 1-2.

## II.    Legal Standard.

The Federal Arbitration Act ("FAA") controls when an arbitration provision is contained in an agreement that affects interstate commerce. *See* 9 U.S.C. § 2. Because the Agreement in this case concerns the interstate retention of sales associates and interstate

---

[3] The parties cite to the Arbitration Provision contained in the Isagenix August 20, 2020 P&Ps (Docs. 35 at 11 n.1, 40 at 19:27), and the Court will too. The Court cites to the copy attached to Hodgin's original Motion to Stay (Doc. 13-2 at 64, 78-79).

1    sales of goods, it clearly affects interstate commerce, and no party argues otherwise.  The

2    "overarching purpose" of the FAA "is to ensure the enforcement of arbitration agreements

3    according to their terms so as to facilitate streamlined proceedings."  *AT&T Mobility LLC*

4    *v. Concepcion*, 563 U.S. 333, 344 (2011).  The FAA "provides that arbitration agreements

5    'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

6    equity for the revocation of any contract.'"  *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087,

7    1092 (9th Cir. 2009) (quoting 9 U.S.C. § 2).  Agreements to arbitrate may "be invalidated

8    by 'generally applicable contract defenses, such as fraud, duress, or unconscionability[.]'"

9    *AT&T Mobility LLC*, 563 U.S. at 339 (citation omitted).

10        "Generally, in deciding whether to compel arbitration, a court must determine two

11   'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and

12   (2) whether the agreement covers the dispute."  *Brennan v. Opus Bank*, 796 F.3d 1125,

13   1130 (9th Cir. 2015).  These "gateway issues" of arbitrability "can be expressly delegated

14   to the arbitrator where the parties clearly and unmistakably" so provide.  *Id.* (citations

15   omitted).  If gateway issues are not clearly delegated, they must be resolved by the court.

16   *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947 (1995) ("[B]ecause the

17   Kaplans did not clearly agree to submit the question of arbitrability to arbitration, the Court

18   of Appeals was correct in finding that the arbitrability of the Kaplan/First Options dispute

19   was subject to independent review by the courts."); *Houghton v. Polychain Alchemy, LLC*,

20   No. 24-7243, 2025 WL 2965204, at *3 (9th Cir. Oct. 21, 2025) (same).

**III.    Have Gateway Issues Clearly Been Delegated to the Arbitrator?**

22        Isagenix notes that the Arbitration Provision expressly incorporates the Commercial

23   Arbitration Rules of the American Arbitration Association ("AAA"), and argues that this

24   incorporation constitutes a clear and unmistakable choice by the parties to delegate

25   arbitrability issues to the arbitrator.  Doc. 40 at 9, 12.  Hodgin disagrees, contending that

26   "the Arbitration Provision (including any delegation clause therein) is unconscionable and

27   unenforceable."  Doc. 35 at 12.  The phrase "delegation clause" is a bit of a misnomer in

28   this case.  The Arbitration Provision quoted above says nothing about delegating gateway

issues to an arbitrator; its incorporation of AAA rules is the claimed source of a clear and unmistakable delegation.

The Commercial Arbitration Rules do indeed delegate questions of arbitrability to the arbitrator. *See* Doc. 35-8 at 15, R. 7(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court."). As a result, the Ninth Circuit has held that an arbitration provision's express incorporation of the AAA rules "constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130. Isagenix relies on *Brennan*. Hodgin contends that *Brennan* does not apply here because he is not sophisticated and *Brennan* involved two sophisticated parties. *See id.* at 1131. While *Brennan* explained that its "holding does not foreclose the possibility that this rule could also apply to unsophisticated parties," it expressly limited its holding "to the facts of the present case, which do involve an arbitration agreement 'between sophisticated parties.'" *Id.* at 1130-31.

The Ninth Circuit recently reiterated that it "has not yet decided whether *Brennan*'s holding should extend to arbitration clauses in consumer contracts between a sophisticated entity and an average unsophisticated consumer." *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024). District courts in this circuit have split on whether incorporation of the AAA rules binds an unsophisticated party to arbitrate arbitrability. *Compare Bazine v. Kelly Servs. Glob., LLC*, No. 22-CV-07170-BLF, 2023 WL 4138252, at *6 (N.D. Cal. June 21, 2023) ("[I]ncorporation of the AAA rules is sufficient to delegate the arbitrability question to the arbitrator" despite the plaintiff's "self-characterization as 'unsophisticated'"), *with Cornell v. Desert Fin. Credit Union*, No. CV-21-00835-PHX-DWL, 2021 WL 4710173, at *3 (D. Ariz. Oct. 8, 2021) (distinguishing *Brennan*, in part, because the plaintiff was unsophisticated).

The Supreme Court has underscored the significance of delegating gateway issues to an arbitrator, noting that "[a] party often might not focus . . . upon the significance of

having arbitrators decide the scope of their own powers," and that finding delegation too readily might "often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." *First Options*, 514 U.S. at 945. Because of these real-world consequences and the fact that the Ninth Circuit has left the question unresolved, the Court will not construe the Arbitration Provision's incorporation of the AAA rules as a clear and unmistakable delegation of gateway questions to the arbitrator. The Court instead will look to the facts of this case to decide whether there is other clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *See Meadows v. Dickey's Barbecue Rests. Inc.*, 144 F. Supp. 3d 1069, 1078 (N.D. Cal. 2015) (explaining the court should consider the position of the parties).[4]

Isagenix and Hodgin were in very different positions when the Agreement was entered in 2019. Isagenix is a sophisticated corporate party that drafted the Agreement. Hodgin's declaration shows that he had limited business and no legal background to inform him. *See* Docs. 35 at 17; 35-1 ¶¶ 3-5, 7. Nothing in the evidence presented by the parties suggests that Hodgin was aware of, let alone focused on, delegating arbitrability to the arbitrator or the significance of that decision. In these circumstances, the Court cannot find that both parties clearly and unmistakably chose to delegate gateway issues to the arbitrator.

---

[4] The Court does not find the District of Arizona cases cited by Isagenix to be persuasive. Two of the cases read *Brennan* as implying that its rule applies to unsophisticated parties. *See Brumley v. Austin Ctrs. for Exceptional Students Inc.*, No. CV-18-00662-PHX-DLR, 2019 WL 1077683, at *3 (D. Ariz. Mar. 7, 2019) ("Plaintiffs contend that *Brennan* is inapplicable where, as here, one party is unsophisticated. The Court disagrees. *Brennan* expressly dispels this argument[.]" (citation omitted)); *LaCross v. Knight Transp. Inc.*, No. CV-15-00990-PHX-JJT, 2016 WL 11527434, at *3 (D. Ariz. Sept. 22, 2016) ("[I]n *Brennan*, the Ninth Circuit made an effort not to limit its holding to cases in which the agreements were executed by sophisticated parties."). The third case is silent on the parties' respective levels of sophistication. *See Cayenne Med., Inc. v. MedShape, Inc.*, No. 2:14-CV-0451-HRH, 2015 WL 5363717, at *4 (D. Ariz. Sept. 15, 2015) ("[I]ncorporation of the AAA Rules effectively delegates jurisdictional questions, including arbitrability and validity, to the arbitrator." (citation omitted)).

1    The Court accordingly must resolve the gateway issues. *First Options*, 514 U.S. at

2    947. These include Hodgin's arguments that the Arbitration Provision is unconscionable

3    and therefore unenforceable, and that his claims in the California Class Action are not

4    within the scope of the Arbitration Provision.[5]

5    **IV.    Choice of Law.**

6        Hodgin argues that the Court should apply California law in deciding whether the

7    Arbitration Provision is unconscionable and covers the claims in the California Class

8    Action. Doc. 35 at 13. Isagenix argues Arizona law should control. Doc. 42 at 7-8.

9        As the Agreement clearly affects interstate commerce, the Court begins by applying

10   federal law under the FAA. *Brennan*, 796 F.3d at 1129 ("For any arbitration agreement

11   within the coverage of the [FAA], [t]he court is to make th[e] [arbitrability] determination

12   by applying the federal substantive law of arbitrability, absent clear and unmistakable

13   evidence that the parties agreed to apply non-federal arbitrability law." (citation modified))**.**

14   When addressing enforcement defenses such as unconscionability, however, federal

15   arbitration law is supplemented by state law. *See Ticknor v. Choice Hotels Int'l, Inc.*, 265

16   F.3d 931, 936-37 (9th Cir. 2001) (explaining that "state law is not entirely displaced from

17   federal arbitration analysis," and "is applicable if that law arose to govern issues

18   concerning the validity, revocability, and enforceability of contracts generally" (emphasis

19   and citation omitted)). The Court therefore must choose whether to apply California or

20   Arizona law to Hodgin's unconscionability and scope arguments.

21       **A.    The Agreement's Choice of Law.**

22       Because the Court and not the arbitrator must resolve the question of arbitrability in

23   this case, the parties' Agreement chooses Arizona law. The Arbitration Provision states

24   that "[i]n the event that a dispute or claim arising out of, or relating to this Agreement, is

25   not subject to arbitration as set forth above, the laws of the state of Arizona shall govern[.]"

26   _____

27   [5] The Court has considered Hodgin's supplemental authority, *Houghton v. Polychain Alchemy, LLC*, No. 24-7243, 2025 WL 2965204, at *1 (9th Cir. Oct. 21, 2025) (Doc. 44),

28   but need not address that case in light of its finding that incorporation of the AAA rules does not require Hodgin to arbitrate arbitrability.

Doc. 13-2 at 79.  The gateway issues that must be decided by the Court – whether the Agreement's Arbitration Provision is enforceable and whether Hodgin's claims fall within its scope – clearly relate to the Agreement, making the choice of law provision applicable to the Court's decision.  But the Agreement's choice of Arizona law does not fully resolve the choice of law question.  The Ninth Circuit has instructed, in an arbitration case, that "[f]ederal courts sitting in diversity look to the law of the forum state in making a choice of law determination." *Ticknor*, 265 F.3d at 937.  Arizona choice of law rules address contractual choice of law provisions like the one contained in the Agreement.  The Court therefore must look to Arizona choice of law rules to decide whether the Agreement's choice of Arizona law controls in this case.

### B.    Restatement § 187.

Arizona law generally enforces contractual choice of law provisions, *see Landi v. Arkules*, 835 P.2d 458, 462 (Ariz. Ct. App. 1992), but the validity of a particular provision must be assessed under Restatement (Second) of Conflict of Laws § 187, *see Cardon v. Cotton Lane Holdings, Inc.*, 841 P.2d 198, 203 (Ariz. 1992).  Section 187 provides:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> > (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> >
> > (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) Conflict of Laws § 187.

### 1.    Subsection 187(1).

Under § 187(1), a contractual choice of law provision will be applied if "the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." *Id.* § 187(1). The "particular issue" presented here is actually two issues – the gateway issues mentioned above.

One issue is whether Hodgin's claims fall within the scope of the Arbitration Provision. That issue could have been resolved by an explicit provision in the Agreement. In fact, the Court finds below that it was resolved in the Agreement. Thus, the gateway issue of the scope of the Arbitration Provision falls within § 187(1) and the Agreement's choice of Arizona law applies to it.

The second gateway issue – whether the Arbitration Provision is unconscionable – could have been resolved through a provision in the Agreement. Arizona courts so hold. *See Effio v. FedEx Ground Package*, No. CV-08-1522-PHX-ROS, 2009 WL 775408, at *2 (D. Ariz. Mar. 20, 2009) (conducting a § 187(1) analysis and explaining that "the issue of unconscionability could not have been resolved through a contractual provision"); *Landi*, 835 P.2d at 462 ("The legality and validity of a contract provision . . . cannot be resolved by an explicit provision in the contract[.]" (citation omitted)). As a result, § 187(1) does not make the Agreement's choice of law provision applicable to the gateway question of unconscionability, and the Court must look further to § 187(2).

### 2.    Subsection 187(2).

Subsection 187(2) says the choice of law provision will be enforced unless one of two conditions exists: either (a) Arizona has "no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice," or (b) application of the chosen state law "would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue," which would also "be the state of the applicable law in the absence of an effective choice of law by the parties." § 187(2)(a)-(b). The Court consequently must

1    determine whether one of these two conditions exist.  If they do not, § 187(2) says the

2    Agreement's choice of law provision is enforceable.

3                    **a.    Subsection 187(2)(a).**

4            Hodgin does not argue that subsection (a) is satisfied (Doc. 35 at 13), and for good

5    reason.  Arizona clearly has a substantial relationship with the parties to the Agreement.

6    Isagenix International LLC is headquartered and incorporated in Arizona, Isagenix

7    Worldwide, Inc. is headquartered in Arizona (Docs. 1 ¶ 2a-b; 13-2 ¶¶ 18-19), and "[a]

8    substantial relationship exists where one of the parties is domiciled or incorporated in the

9    chosen state."  *ABF Capital Corp. v. Osley*, 414 F.3d 1061, 1065 (9th Cir. 2005) (citation

10   omitted); *see also Consul Ltd. v. Solide Enters., Inc.*, 802 F.2d 1143, 1147 (9th Cir. 1986)

11   ("[I]f one of the parties resides in the chosen state, the parties have a reasonable basis for

12   their choice." (citation omitted)); *LaCross v. Knight Transp. Inc.*, No. CV-15-00990-PHX-

13   JJT, 2024 WL 249162, at *11 (D. Ariz. Jan. 23, 2024) (holding an Arizona-based company

14   had a substantial relationship with Arizona for purposes of § 187(2)(a), and there was a

15   reasonable basis for choosing Arizona law).  Subsection (a) therefore does not make the

16   Agreement's Arizona choice of law provision unenforceable.

17                   **b.    Subsection 187(2)(b).**

18           The drafters' comments to § 187 describe the requirements of subsection (2)(b) as

19   two-step:  "Application of the chosen law will be refused only (1) to protect a fundamental

20   policy of the state which," as per the rule of § 188, "would be the state of the otherwise

21   applicable law, provided (2) that this state has a materially greater interest than the state of

22   the chosen law in the determination of the particular issue."  Restatement (Second) Conflict

23   of Laws § 187 cmnt. g.  The Ninth Circuit divides subsection (2)(b) into four requirements:

24           Subsection 2(b) of [§ 187] enables a party to avoid his agreement to apply a
        particular state's law if he can show these things: (1) application of the law
25      of the chosen state violates a policy of a state, (2) the policy is fundamental,
        (3) the state with the contrary policy has a materially greater interest than the
26      chosen state in the determination of the particular issue, and (4) the state with
        the contrary policy would be the state of the applicable law under section 188
27      were it not for the choice of law provision.

28

1    *Int'l Bus. Machines Corp. v. Bajorek*, 191 F.3d 1033, 1038 (9th Cir. 1999).

2         Whether the requirements of § 187(2)(b) are divided into two or four parts, it is clear

3    that Hodgin has not addressed all of them. He never addresses whether, "under the rule

4    of § 188, [California] would be the state of the applicable law in the absence of an effective

5    choice of law by the parties." § 187(2)(b). Indeed, his briefs never mention § 188. *See*

6    Docs. 35, 41. And he makes only passing reference to the requirement that California must

7    have a materially greater interest in this issue than Arizona. Doc. 35 at 13. Because Hodgin

8    bears the burden of showing that § 187 invalidates the Agreement's choice of law

9    provision, *Bajorek*, 191 F.3d at 1038, and has not shown that all requirements of

10   § 187(2)(b) are satisfied, he fails in this challenge to the Agreement's choice of Arizona

11   law.

12        Hodgin addresses some parts of subsection (2)(b). He argues that Arizona law is

13   contrary to a fundamental policy of California (Doc. 35 at 13), but even this limited

14   argument is not persuasive. His motion does not identify any way Arizona law is contrary

15   to a fundamental policy of California. *See id.* Instead, Hodgin cites *Senne v. Kansas City*

16   *Royals Baseball Corp.*, 934 F.3d 918 (9th Cir. 2019), for the general proposition that

17   applying Arizona law would be contrary to a fundamental policy of California. But *Senne*

18   did not apply § 187(2)(b). Indeed, it did not even address whether a contract's choice of

19   law provision was enforceable. Instead, *Senne* considered whether the district court's class

20   certification decision correctly chose to apply California's minimum wage law to a

21   subclass of California baseball players, and did so by applying "California's three-step

22   governmental interest analysis for choice-of-law questions." *Id.* at 929. That analysis

23   certainly does not control this Court's application of § 187(2)(b).

24        Further, the issue in *Senne* – whether California had "a strong interest in applying

25   its overtime law to all nonexempt workers, and all work performed, within its borders" (*id.*

26   (citation omitted)) – is significantly different from the question this Court must decide

27   under § 187(2)(b) – whether application of Arizona unconscionability law would be

28   contrary to a fundamental policy of California. *Senne* is not helpful on this issue.

The only other case cited by Hodgin's motion is *LaCross*, 2024 WL 249162.  It too was a class action involving the application of California labor laws, and the district court held under § 187(2)(b) that California wage law would apply to work done entirely within California, while Arizona law would apply to interstate work.  *Id.* at *13.  *LaCross* is not fully persuasive in this case, however, because the interest of California wage laws in the outcome of this case is unresolved.  The Agreement says Hodgin is not an employee subject to such laws; Hodgin claims that he is an employee.  Doc. 35 at 10.  That issue will need to be resolved during the arbitration if it is ordered, or in the California Class Action if arbitration is not ordered.  As an unresolved issue, the Court cannot find it strongly invokes the policies of California wage laws.  What is more, *LaCross* did not address application of California's unconscionability law and therefore says little about the specific issue this Court must decide.

Hodgin's reply brief is no more persuasive.  Rather than specifying how application of Arizona unconscionability law would undermine a fundamental policy of California, Hodgin states that "the Isagenix Parties' opposition identifies many differences between the two states' laws."  Doc. 41 at 15.  But Hodgin does not specify these differences or explain why they undermine fundamental California policies.  He simply argues that "to the extent those differences are dispositive to the unconscionability question," they undermine California public policy.  *Id.*  Under § 187, however, "courts will not refrain from applying the chosen law merely because this would lead to a different result than would be obtained under the local law of the state of the otherwise applicable law."  *Wainwright v. Melaleuca, Inc.*, 844 F. App'x 958, 960 (9th Cir. 2021) (citation modified); *see also* Restatement (Second) Conflict of Laws § 187 cmnt. g ("The forum will not refrain from applying the chosen law merely because this would lead to a different result than would be obtained under the local law of the state of the otherwise applicable law.").  Mere differences between Arizona and California law are not dispositive.

Hodgin's reply mentions only one difference – Arizona permits fee-shifting and California does not in employer-employee disputes.  Doc. 41 at 15.  Hodgin cites *Lim v.*

*TForce Logistics, LLC*, 8 F.4th 992 (9th Cir. 2021), for the proposition that fee-shifting in employer-employee disputes is against California public policy. But *Lim* did not engage in a choice of law analysis; the parties agreed that the unconscionability question was governed by California law. *Id.* at 1000 n.3. The Ninth Circuit held that the fee-shifting provision was unconscionable under California law, but it did not address whether a competing state's law (in this case, Arizona's) undermined a fundamental California policy. *Id.* at 1003. And even if *Lim* could be viewed as holding that Arizona fee-shifting statutes would undermine a fundamental policy of California law, Hodgin has not – as shown above – addressed the other requirements of § 187(2)(b). Applying *Lim* in this case would still leave Hodgin well short of the goal.

Further, the Ninth Circuit has found the unconscionability law of California and competing states to be insufficiently fundamental to invalidate a choice of law provision. *See, e.g., Wainwright*, 844 F. App'x at 960 ("Wainwright fails to identify a fundamental policy difference between California's and Idaho's unconscionability laws. Under § 187, a 'fundamental' policy difference must be a 'substantial one,' and courts 'will not refrain from applying the chosen law merely because this would lead to a different result than would be obtained under the local law of the state of the otherwise applicable law.'" (citation omitted)).[6] Further, both Arizona and California "have an interest in governing the behavior of entities operating within [them], and in protecting or vindicating the right of their citizens." *Effio*, 2009 WL 775408, at *2. Given that Hodgin cites few differences in the unconscionability laws of Arizona and California, and that both states have interests

---

[6] The Court notes that while the Ninth Circuit invalidated a choice of law provision in favor of California law in an unconscionability dispute, that case concerned fundamental policies of the California Franchise Investment Law ("CFIL"), which are inapplicable here. *See Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1003 (9th Cir. 2010) ("Enforcement of the arbitration clause in the franchise agreements in this case would contravene the fundamental California public policy in favor of protecting franchisees from unfair and deceptive business practices, as established by the CFIL.").

in protecting their citizens, Hodgin has failed to show that Arizona law is contrary to a fundamental policy of California.

Finally, as noted above, Hodgin makes only passing reference to the subsection (2)(b) requirement that California have a materially greater interest in this case than Arizona.  Doc. 35 at 13.  California does not.  Isagenix is headquartered in Arizona, four of the five Isagenix officers subject to the underlying action reside in Arizona (the fifth resides in Texas), and Hodgin attended Isagenix employment events in Arizona.  Docs. 1 ¶ 2a-b, d-e, ¶ 25; 13-2 at 10, ¶¶ 21-24.  And the competing contacts are not strictly localized in California.  Hodgin worked from his California residence (Doc. 35 at 10), but his work was conducted online and presumably reached customers outside of California.  *See* Doc. 13-2 at 35, ¶ 112 ("Plaintiff understood . . . that sales efforts were to be predominately online."), ¶ 115 ("Plaintiff rarely, if ever, sold to customers in-person, and his advertising and messaging was done online.").  Given the multiple Arizona contacts in this case and the less compelling California contacts, the Court cannot conclude that California has a materially greater interest than Arizona.  *See Netzel v. Am. Express Co.*, No. CV-22-01423-PHX-SMB, 2023 WL 4959587, at *4 (D. Ariz. Aug. 3, 2023), *aff'd*, No. 23-16083, 2024 WL 3493285 (9th Cir. July 22, 2024) (finding plaintiffs "failed to establish that California ha[d] a greater material interest in the enforceability of the arbitration agreements" where "[b]ased on the[] widely dispersed contacts, the Court [could not] conclude that California law would [have] been the state of applicable law absent the New York choice of law provision").

In short, Hodgin fails to satisfy any of the requirements of § 187(2)(b).  He has not shown that California law would be chosen under § 188, that application of Arizona unconscionability law would undermine a fundamental policy of California law, or that California has a materially greater interest in this case than Arizona.  Because none of the factors in § 187(2)(b) have been shown to apply, the Agreement's choice of Arizona law will be enforced by the Court.

This outcome is supported by the underlying policy of § 187. Comments to the section explain that a "[p]rime objective[] of contract law [is] to protect the justified expectations of the parties," which "may best be attained in multistate transactions by letting the parties choose the law to govern the validity of the contract[.]" Restatement (Second) Conflict of Laws § 187 cmnt. e; *see also Wainwright*, 844 F. App'x at 960 ("The principles set forth in Restatement section 187 . . . reflect a strong policy favoring enforcement of [choice of law] provisions." (citation modified)).

**V.      Gateway Issues.**

The Court will first address whether the Arbitration Provision is unenforceable because it is unconscionable, and then whether Hodgin's claims fall within its scope.

**A.      Unconscionability.**

As the party opposing arbitration, Hodgin bears the burden of proving unconscionability. *Lim*, 8 F.4th at 999. In Arizona, unconscionability includes both procedural and substantive unconscionability, and either may be used to invalidate a contract. *Coup v. Scottsdale Plaza Resort, LLC*, 823 F. Supp. 2d 931, 947 (D. Ariz. 2011).

"Procedural or process unconscionability is concerned with 'unfair surprise,' fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should." *Maxwell v. Fid. Fin. Servs., Inc.*, 907 P.2d 51, 57-58 (Ariz. 1995) (citation omitted). Procedural unconscionability resembles fraud and duress. *Id.* at 58.

"Substantive unconscionability is an unjust or 'one-sided' contract." *Id.* (citation omitted). "Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Id.* (citation omitted). The Court will address each of Hodgin's unconscionability arguments.

**1.      Procedural Unconscionability.**

Hodgin argues that the Agreement was procedurally unconscionable as a "take-it-or-leave-it" contract of adhesion (Doc. 35 at 19); that he lacked bargaining power, resulting

1    in a contract that did not reflect a true meeting of the minds (*id.* at 20); that the Arbitration

2    Provision was an "unfair surprise" because the Agreement was "especially onerous and

3    unfair" due to its "many different components" (*id.* at 21-22); and that the P&Ps lacked a

4    table of contents and were in the same "small, grey" front as the Arbitration Provision,

5    without contrast (*id.*).

6                    **a.    Contract of Adhesion.**

7            Hodgin acknowledges that "[u]nder Arizona law, whether a contract is adhesive, or

8    presented to the non-drafting party on a take-it-or-leave-it basis, does not alone indicate

9    procedural unconscionability."  Doc. 35 at 19 (citing *Broemmer v. Abortion Servs.*, 840

10   P.2d 1013, 1016 (Ariz. 1992)).  Cases applying Arizona law agree.  *See Longnecker v. Am.*

11   *Express Co.*, 23 F.Supp.3d 1099, 1109 (D. Ariz. 2014) ("[E]ven if the arbitration

12   agreements were contracts of adhesion that would not mean that they are procedurally

13   unconscionable.  Contracts of adhesion are not per se unenforceable."); *R & L Ltd. Invs.,*

14   *Inc. v. Cabot Invs. Properties, LLC*, 729 F.Supp.2d 1110, 1115 (D. Ariz. 2010) (explaining

15   Arizona law does not support the assertion that a finding of adhesion equates to a finding

16   of procedural unconscionability).

17           Given this law, the Court cannot find unconscionability based on the fact that

18   Hodgin had no choice but to sign the Agreement if he wanted to become an Isagenix

19   Associate.  The Court will, however, keep this fact in mind as it addresses his other

20   procedural unconscionability arguments.

21                   **b.    Lack of Bargaining Power.**

22           Hodgin's lack-of-bargaining-power argument is essentially the same as his adhesion

23   argument.  Hodgin asserts he was presented with a take-it-or-leave-it contract and had no

24   power to make changes.  Doc. 35 at 20.  But he cites only a California case for the

25   proposition that this is indicative of oppression.  *Id.*

26           Mere inequality in bargaining power is not sufficient to invalidate an arbitration

27   agreement.  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991).  And under

28   Arizona law, an agreement may be enforceable even if the terms are not negotiable.  *See*

*Broemmer*, 840 P.2d at 1016.  Even if a weaker party does not understand all the terms of an agreement, the agreement will still be enforceable if consistent with reasonable expectations and not unduly oppressive.  *See id.*  That Hodgin lacked bargaining power is therefore not dispositive.

### c.    Unfair Surprise.

Hodgin argues that the Agreement included a "large number of moving parts" that "put an ongoing burden on the Associate to understand changing rights and obligations." Doc. 35 at 21.  He further contends that the "delegation clause" was not included in the P&Ps, but instead was found in separate AAA Commercial Arbitration Rules that were not provided to him.  *Id.* at 21-22.  He asserts that the rules and various other provisions in the P&Ps make it difficult for an Associate to understand how arbitration will proceed.  *Id.* at 21.

But Hodgin never claims that he was unfairly surprised, either in his motion (*id.* at 21-22) or in his attached declaration (Doc. 35-1).  Nor can the Court conclude the Arbitration Provision is unconscionable because it did not include a copy of the AAA rules. The Arbitration Provision, in all capital letters, stated that arbitration would be conducted under the rules.  *See* Doc. 13-2 at 78, ¶ 9.10.  Courts applying Arizona law have rejected the argument that incorporation by reference amounts to unconscionability.  *See Coup*, 823 F. Supp. 2d at 953 (finding Arizona law rejects the argument that incorporation by reference of an arbitration clause is substantively unconscionable); *Weatherguard Roofing Co. v. D.R. Ward Const. Co.*, 152 P.3d 1227 (Ariz. Ct. App. 2007) (holding a subcontract's incorporation by reference of general construction contract documents which included an arbitration clause was enforceable against a subcontractor because physical attachment of the incorporated document is not necessary if it is clearly incorporated by reference).

### d.    Formatting Argument.

Hodgin argues that the 18-page P&Ps, which locate the Arbitration Provision near the end, are "in small, grey (not black) font, the [Arbitration] Provision is in the same font as the rest of the P&Ps, and no table of contents is included."  Doc. 35 at 22.  Hodgin cites

*Duenas v. Life Care Ctrs. of Am., Inc.*, 336 P.3d 763, 768 (Ariz. Ct. App. 2014), for the proposition that the absence of "conspicuous typeface" can be a factor in evaluating procedural unconscionability. Doc. 35 at 22. But *Duenas* said nothing more about this factor and found the arbitration agreement before it not unconscionable. *Duenas*, 336 P.3d at 769 ("[T]he superior court correctly concluded that the undisputed facts did not show procedural unconscionability."). And even if typeface is a factor, the Arbitration Provision in this case is set forth in all-capital letters, unlike most of the P&Ps. *See* Doc. 13-2 at 78, ¶ 9.10. Further, a later provision in the Agreement states in bold type: "**You agree that any unresolved dispute will be resolved and settled in accordance with and pursuant to Policy 9.10 (Arbitration and Government Law).**" *Id.* at 61.

Significantly, Hodgin does not assert in his declaration that he could not read the P&Ps because of the font size or color, that he did not read the Arbitration Provision when he twice became an Associate, or that the placement of the provision in paragraph 9.10 of the P&Ps somehow made it unreviewable by him. *See* Doc. 35-1. Nor does he contend that he was unable to read the P&Ps before he agreed to them, or that Isagenix somehow misrepresented their contents. *See id.* Hodgin's formatting argument is unpersuasive.

### e.    Procedural Unconscionability Conclusion.

Even considering the fact that the P&Ps constitute a contract of adhesion, Hodgin has not carried his burden of showing procedural unconscionability under Arizona law.

### 2.    Substantive Unconscionability.

Hodgin argues that unconscionability arises from the arbitrator selection criteria (Doc. 35 at 22-23), the Arbitration Provision's alleged non-mutuality (*id.* at 24), and various specific clauses of the provision (*id.* at 25-31).

### a.    Arbitrator Bias.

Hodgin argues that the Arbitration Provision's specifications for an arbitrator are unconscionable because only an arbitrator biased in favor of multi-level marketing companies could meet them. *Id.* at 22-23. Arizona courts have recognized that "arbitration terms that by themselves create a partial forum would be . . . unconscionable for failure to

provide a person with the ability to effectively vindicate their rights before a neutral arbitrator." *Gullett v. Kindred Nursing Ctrs. W., L.L.C.*, 390 P.3d 378, 384 (Ariz. Ct. App. 2017). For example, "arbitration agreements are unconscionable and unenforceable when they give an employer unrestricted control over the selection of arbitrators such that the employer's own managers can serve as the sole decision makers in the dispute." *Falcone Bros. & Assocs., Inc. v. City of Tucson*, 381 P.3d 276, 283 (Ariz. Ct. App. 2016).

The only Arizona case cited by Hodgin is *Gullett*, and that case declined to find unconscionability based on the arbitrator selection process. *Gullett* found the selection procedures sufficiently neutral where "the Agreement . . . require[d] the arbitration be conducted by an independent impartial entity" and precluded the employer "from designating a captive arbitration company or a specific arbitrator." 390 P.3d at 385.

The Arbitration Provision in this case states that "[a]t least one arbitrator shall be an attorney at law experienced in business law transactions and network marketing." Doc. 13-2 at 78, ¶ 9.10. From this sentence, Hodgin claims the arbitrator necessarily will be a pro-defense insider from the network marketing industry. Hodgin's counsel identifies a few potential arbitrators known to counsel, and characterizes them in this way. But Hodgin does not address the actual procedures that will be used under the AAA rules to select the arbitrator. Those rules provide the following protections:

- If the parties have not selected the arbitrator (as is true in this case), the AAA shall send the parties a list of 10 arbitrators from its National Roster and the parties will be "encouraged to agree" on an arbitrator from the list. Doc. 35-8 at 19, R. 13(a). If the parties are unable to agree, each party shall strike arbitrators from the list and provide an order of preference for those who remain, and the AAA will select the arbitrator from those remaining on the list. *Id.*

- If for any reason a selection cannot be made from the list, "the AAA shall have the power to make the appointment from among other members of the National Roster without the submission of additional lists." *Id.* at 19-20, R. 13(b).

- Any person appointed as an arbitrator "shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives." *Id.* at 21, R. 18(a).

- "Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for . . . partiality or lack of independence[.]" *Id.* at 22, R. 19(a).

- "Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified on the grounds set out above, and shall inform the parties of its decision, which decision shall be conclusive." *Id.*, R. 19(c).

These safeguards are at least as great as those found to be sufficiently neutral in *Gullett*. And the mere fact that one of the arbitrators in this case – or the single arbitrator if there is only one – must be "an attorney at law experienced in business law transactions and network marketing" (Doc. 13-2 at 78, ¶ 9.10) does not change this conclusion. That description could undoubtedly include Hodgin's attorneys in this case, and they certainly cannot be characterized as industry insiders. The Supreme Court has "declin[ed] to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain [a] competent, conscientious, and impartial arbitrator[]." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 634 (1985). The Court likewise will not indulge such a presumption, and cannot conclude that the description of the arbitrator in the Arbitration Provision is sufficient to show that an unfair arbitrator will be appointed given the governing AAA procedures.

For the same reasons, the Court is not persuaded by Hodgin's argument that the Arbitration Provision is unconscionable because it does not require an arbitrator familiar with the state law governing the arbitration, creating the possibility that the arbitrator may "substitute industry customs for actual law." Doc. 35 at 24. Experienced arbitrators like

those on the AAA national roster undoubtedly deal often with competing state laws and understand that the law, not industry customs, governs their decisions.

### b.    Non-Mutuality.

Hodgin argues the Arbitration Provision is non-mutual and thus substantively unconscionable because the P&Ps state that "Isagenix may, at its sole discretion, amend" any part of the Agreement, and the amendment becomes binding after three days' notice to Hodgin.  Docs. 13-2 at 76, ¶ 8; 35 at 24.  Hodgin again relies on *Gullett*, but that case declined to find an arbitration provision unconscionable on the ground that it was non-mutual.  *Gullett*, 390 P.3d at 386.  *Gullett* instead noted that the agreement reflected "a mutual obligation to arbitrate[.]"  *Id.*  The Arbitration Provision in this case likewise applies to both parties; Isagenix makes no claim that it is not bound by the terms of the provision.

Hodgin argues that the Arbitration Provision is unconscionable because it could be amended unilaterally by Isagenix, but he does not claim it has been amended in this case.[7] The provision is binding on both parties, as it was in *Gullett*, and the Court cannot find it unconscionable under Arizona law.

Additionally, the Agreement provides that it may be terminated at will by either Isagenix or Hodgin.  Doc. 13-2 at 60 ("You may terminate your IAAA at any time and for any reason . . . . Isagenix may also terminate your IAAA or Position at any time for any reason." (emphasis omitted)).  Arizona law holds that unilateral amendment provisions in at-will agreements are not unconscionable.  *See*, *e.g.*, *Pinto v. USAA Ins. Agency Inc. of Tex. (FN)*, 275 F. Supp. 3d 1165, 1171 (D. Ariz. 2017) (explaining provisions permitting unilateral termination or amendments with notice "are not substantively unconscionable under Arizona law when . . .  employment is on an at-will basis" (citation omitted)).

### c.    Choice of Law Clauses.

Hodgin argues the Arbitration Provision contains two ambiguous clauses relating to the choice of law which "impose extreme hurdles to an Associate's ability to understand

---

[7] Hodgin notes that the provision was amended in 2025, after he terminated his relationship with Isagenix, but agrees those amendments do not apply to him.  Doc. 35 at 25.

1    and protect her legal rights" and rise to the level of unconscionability. Doc. 35 at 25.

2    Specifically, Hodgin argues the Arbitration Provision's forum selection provision, which

3    identifies the location where arbitration proceedings will occur, and the residence

4    amendment clause, which instructs when the P&Ps should incorporate the law of the

5    Associate's residence, are unconscionable. *Id.* at 26.

6         This argument is not easy to follow. Hodgin contends that the clauses do not specify

7    what kind of law applies and queries whether they include common law, statutes,

8    administrative regulations, city ordinances, Attorney General opinions, and so forth. *Id.* at

9    25. But this would appear to be a common failing of all choice of law provisions; they

10    never contain that level of granular detail. Hodgin also asks what happens if a plaintiff

11    asserts claims under the laws of more than one state (a commonly occurring event) and

12    cannot tell in advance which claims will be viable. *Id.* But he cites no case holding that a

13    choice of law provision which lacks his preferred level of specificity, or which fails to

14    clearly identify in advance what kinds of claims will be viable, renders a contract

15    unconscionable.

16         Hodgin points to differences between Arizona and California misclassification laws

17    and notes that application of Arizona law would leave him with no viable California claims.

18    *Id.* at 26-27. But again, such an outcome is possible in many cases where there are

19    substantive choice of law issues to be resolved, and Hodgin does not explain why that

20    possibility makes this Arbitration Provision unconscionable.

21         Hodgin further notes that an Associate cannot know his rights in advance of an

22    arbitration ruling, but how is that any different from the uncertainty every claimant faces

23    when a choice of law decision must be made by a court or an arbitrator? He frames the

24    same argument in different language, saying the arbitrator in this case is empowered to

25    strip him of his California rights by choosing Arizona law. *Id.* at 28. But again, that is

26    what judges and arbitrators must do all the time when they make choice of law decisions

27    and resolve disputes involving more than one state. *See Hoyt v. WeLink Commc'ns, Inc.*,

28    No. CV-23-00287-PHX-SMB, 2024 WL 169671, at *1 (D. Ariz. Jan. 16, 2024) ("[W]here

there is a valid arbitration agreement, conflicts of law analysis is reserved for the arbitrator." (citation omitted)).

Further, the Supreme Court has instructed that a court "should not, on the basis of 'mere speculation' that an arbitrator might interpret [an] ambiguous agreement[] in a manner that casts [its] enforceability into doubt, take upon [itself] the authority to decide the antecedent question of how the ambiguity is to be resolved." *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 406-07 (2003) (citation omitted). The Court therefore will not predict that the arbitrator's decision in this case will be unfair or a surprise to Hodgin. And while a "contractual ambiguity could itself be characterized as raising a 'gateway' question of arbitrability," *id.* at 407 n.2, that is not the case here. The clauses in question only instruct where arbitration should proceed and what laws apply during arbitration, not whether arbitration should be compelled. Any ambiguities, therefore, should be resolved in the arbitration.

Finally, "when a court interprets provisions in an agreement covered by [the FAA], due regard must be given to federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Farnam Companies, Inc. v. Golden Crown Corp.*, No. CIV030791PHX-EHC, 2003 WL 22331489, at *3 (D. Ariz. July 30, 2003) (citing *Mitsubishi Motors Corp.*, 473 U.S. at 626). The Court need not resolve the ambiguity of the provisions cited by Hodgin because they do not rise to the level of unconscionability and do not implicate other gateway questions, which are the only questions being decided today.

### d.    Modification and Severability Clause.

Without citing any case law, much less any Arizona law, Hodgin argues that the modification and severability provisions of the P&Ps render the Arbitration Provision unconscionable because they empower Isagenix to "make up standards on the fly" and save the arbitration requirement from any challenge raised. Doc. 35 at 29. But the provision does not authorize Isagenix to sever provisions; that authority rests with the Court or an arbitrator. *See* Doc. 13-2 at 78, ¶ 9.8. And "Arizona law embraces the doctrine of

severability in the context of contractual unconscionability." *Prime Loyalty LLC v. GoDaddy Inc.*, 2025 WL 1807721, at *12 (D. Ariz. July 1, 2025) (citing A.R.S. § 47-2302).

Courts applying Arizona law have discretion to "either (1) refuse to enforce an unconscionable contract, (2) refuse to enforce any unconscionable portion of a contract, or (3) limit the application of any unconscionable clause of a contract to avoid any unconscionable result." *Maxwell*, 907 P.2d at 60 (citing A.R.S. § 47–2302(A)). Thus, the severability provision does not require an arbitrator to do Isagenix's bidding as Hodgin asserts. Rather, the arbitrator is encouraged by Arizona law to reach a fair result, whether that involves severing a provision or not severing it and invalidating the contract. Hodgin has not shown that the severability and modification provisions of the P&Ps render the Arbitration Provision unconscionable.

### e.    Confidentiality Clause.

Hodgin argues the Arbitration Provision's confidentiality clause, which "requires the 'written consent of both parties' to disclose the 'existence, content, or results' of an arbitration," is unconscionable. Doc. 35 at 29 (quoting Doc. 13-2 at 78). He argues it will prevent him from disclosing the results of the arbitration to a court, discussing the arbitration with fact and expert witnesses, and collecting evidence in support of his claims. *Id.* Isagenix states this "is not the intent of the language" and specifically "consent[s] to the blue penciling and/or severance of this clause to the extent necessary to permit the parties to fully and fairly prepare their case and present their claims." Doc. 40 at 24 (emphasis omitted).

Hodgin's motion cites only one Arizona case, *Adams v. UHS of Tucson, LLC*, 2021 Ariz. Super. LEXIS 218 (Ariz. Super. Ct. Aug. 11, 2021). In addition to the fact that this state trial court decision is not precedential and therefore does not establish Arizona law, the case actually supports the solution proposed by Isagenix. After finding that a confidentiality provision was unconscionable because it would interfere with case

preparation before the arbitrator, the trial judge severed the provision.  *Id.* at *15 (eliminating confidentiality provision by blue penciling it out of the arbitration provision).[8]

In his reply brief, Hodgin cites *Longnecker*, 23 F. Supp. 3d 1099, but that case applied California law.  *Id.*  at 1110.  And after finding the confidentiality provision unconscionable, that court also adopted Isagenix's proposed solution and severed the confidentiality provision.  *Id.* at 1111-12.

The Court concludes that the confidentiality clause's potentially broad scope, as feared by Hodgin, can be cured by the arbitrator's severance of the clause, a remedy to which Isagenix has consented.  Doc. 40 at 24.  The clause therefore will not hinder Hodgin's case preparation or prevent his seeking court enforcement of any decision.

In addition, the Court notes that mutually binding confidentiality provisions, such as the one here, generally are found not to be unconscionable under Arizona law.  *See*, *e.g.*, *Shelby v. Brookdale Senior Living Inc.*, No. CV-20-00804-PHX-MTL, 2021 WL 718183, at *4 (D. Ariz. Feb. 24, 2021), *aff'd*, No. 21-15547, 2022 WL 1657245 (9th Cir. May 25, 2022) (explaining that under Arizona law "[t]he mere fact that an arbitration agreement contains a confidentiality provision does not make it per se unconscionable," and the confidentiality provision was not unconscionable where it was a "standard confidentiality agreement and it applie[d] equally to both parties"); *Aldrete v. Metro Auto Auction LLC*, No. CV-21-00622-PHX-SMB, 2022 WL 60544, at *5 (D. Ariz. Jan. 6, 2022) (holding a mutually binding confidentiality clause was not substantively unconscionable under Arizona law).

Given these considerations, including the consented-to blue-penciling of the confidentiality clause by the arbitrator, the Court does not find that the confidentiality clause renders the Arbitration Provision unconscionable.

/ / /

---

[8] The trial judge declined to compel arbitration because he found the arbitration provision was not governed by the FAA (*id.* at *9), but that decision was reversed by the Arizona Court of Appeals, *see UHS of Tucson, LLC v. Metcalf*, 2022 Ariz. App. Unpub. LEXIS 241, at *10 (Ariz. Ct. App. Mar. 8, 2022).

1          **f.      Cost-Shifting Clause.**

2          Hodgin argues that the cost-shifting mechanism of the Arbitration Provision is

3   unconscionable.  Doc. 35 at 30.  That clause provides that "[e]ach party to the arbitration

4   shall be responsible for its own costs and expenses, including legal and filing fees;

5   provided, however, that the arbitrator will have discretion to award legal fees and other

6   costs to the prevailing party."  Doc. 13-2 at 78, ¶ 9.10.

7          Hodgin relies on *Lim*, which applied California law and policy to hold that a fee-

8   shifting clause in an employment-related arbitration clause was unconscionable.  *See Lim*,

9   8 F.4th at 1003.  Hodgin cites no comparable Arizona law or policy, and Arizona statutes

10  permit the award of attorneys' fees and costs to prevailing parties in cases arising out of

11  contract. *See* A.R.S. § 12-341.01. The Court cannot conclude the cost-shifting clause is

12  unconscionable under Arizona law.  *See, e.g.*, *Holmes v. CVS Health*, No. CV-19-04936-

13  PHX-SMB, 2020 WL 4365881, at *4 (D. Ariz. July 30, 2020) ("Plaintiff's mere

14  speculation that she will lose in arbitration and the arbitrator will award costs to

15  [Defendant] does not make her Arbitration Agreement unconscionable.").

16          **3.      Unconscionability Conclusion.**

17          Hodgin bears the burden of proving the Arbitration Provision is substantively

18  unconscionable under Arizona law.  He has not carried this burden, and the Court

19  accordingly finds the provision enforceable.

20          **B.      Scope of the Arbitration Provision.**

21          The Arbitration Provision applies to "any controversy or claim arising out of, or

22  relating to, these policies and procedures, the compensation plan, or the guidance

23  documents, or the breach thereof[.]"   Doc. 13-2 at 78, ¶ 2.10 (capitalization omitted).

24  Hodgin argues that because his claims are based on California wage laws and not the P&Ps,

25  they fall outside the scope of the Arbitration Provision.  *See* Doc. 35 at 32.

26          The P&Ps provide that "Isagenix Independent Associates, in whatever form, are

27  independent contractors."  Doc. 13-2 at 66, ¶ 2.8.  Signing Associates "acknowledge and

28  agree that [they] are not an agent, employee, legal representative or franchisee of

Isagenix[.]"  *Id.*  They also "agree that [they] will not be treated as an employee . . . for purposes of [various federal and state laws]."  *Id.*

The P&Ps further provide:

> As a self-employed independent contractor, you will be operating your own independent business, buying and selling products and services available through and by Isagenix on your own accord.  You have complete freedom in determining the number of hours you will devote to your business, and you have the sole discretion of scheduling such hours.  Isagenix will not provide you with a place of business, and if you desire a place of business other than your own residence, you will be responsible for procuring, furnishing, equipping, and paying for such place of business.

*Id.*  These terms inform the Court's analysis of Hodgin's scope argument.

### 1.    Are Hodgin's Claims Within the Scope of the Arbitration Provision?

Hodgin's complaint alleges that Isagenix misclassified him as an independent contractor when he really was an employee, and that Isagenix failed to provide him meal periods, rest periods, minimum wages, overtime wages, timely wages, separation wages, wage statements, and reimbursements of expenses, and failed to maintain payroll records, all in violation of California labor statutes.  Doc. 40-3 at 4; *see also* Doc. 13-2 at 1-55.  The gravamen of Hodgin's complaint is that the relationship established by the Agreement, including the P&Ps, is fundamentally different than the Agreement provides.  He does not dispute that he twice entered into the Agreement, but he nonetheless asserts that the benefits he was owed by Isagenix are not those described in the Agreement.  His claims arise out of California labor statutes, but they clearly present, as the Arbitration Provision provides, a "controversy or claim . . .  *relating to*, [the] policies and procedures, the compensation plan, or the guidance documents, or the breach thereof[.]"  Doc. 13-2 at 78 (emphasis added) (capitalization omitted).

The Agreement, including the P&Ps, lay out Hodgin's responsibilities as an Isagenix Associate, as well as Isagenix's responsibilities (and lack of responsibilities) with respect to Hodgin's work.  The Compensation Plan, which is part of the Agreement as

noted above, lays out the terms of Hodgin's compensation. Any court or arbitrator addressing Hodgin's claim that his relationship with Isagenix entitled him to the pay and benefits of California labor law will need to refer to and understand the Agreement and Compensation Plan in order to understand the parties' relationship. California cases illustrate this point. California courts often consult the terms of the underlying employment agreement when deciding whether a plaintiff has been misclassified. *See, e.g.*, *S. G. Borello & Sons, Inc. v. Dep't of Indus. Rels.*, 769 P.2d 399, 409 (Cal. 1989) (explaining "a worker's express or implied agreement to forego coverage as an independent contractor is 'significant'" when deciding his employment status for purposes of a claim under the Worker's Compensation Act (citation omitted)); *Bradley v. Networkers Int'l, LLC*, 150 Cal. Rptr. 3d 268, 281 (Cal. Ct. App. 2012), *as modified on denial of reh'g* (Jan. 8, 2013) (discussing the terms of an independent contractor agreement as "evidence relevant to the factual question [of] whether the class members were employees or independent contractors"); *Gonzalez v. Workers' Comp. Appeals Bd.*, 1593, 54 Cal. Rptr. 2d 308, 313 (Cal. Ct. App. 1996) (consulting the employment contract's terms in finding that the "circumstances strongly indicate[d] an employment relationship"). And surely Isagenix will invoke the Agreement in its arguments that Hodgin is not an employee under California law. Employers often do. *See*, *e.g.*, *S. G. Borello & Sons, Inc.*, 769 P.2d at 403 (employer arguing workers "expressly accepted their independent status" and pointing to contract terms in support). The Court therefore concludes that Hodgin's claims are, in the words of the Arbitration Provision, "related to" the "policies and procedures, the compensation plan, or the guidance documents, or the breach thereof[.]" Doc. 13-2 at 78, ¶ 9.10 (capitalization omitted). They accordingly fall within the scope of the Arbitration Provision.

Hodgin cites a number of cases to argue that his statutory labor claims are not within the scope of the Arbitration Provision, but those cases have a significant distinguishing characteristic – they each addressed a narrower arbitration clause than the one at issue here. The provision in this case covers claims "arising out of, *or relating to*" the parties'

agreements.  *See* Doc. 13-2 at 78, ¶ 9.10 (emphasis added) (capitalization omitted).  None of the cases cited by Hodgin addressed an arbitration clause with the broad "relating to" language.  *See Narayan v. EGL, Inc.*, 616 F.3d 895 (9th Cir. 2010) (contract provided that it "shall be interpreted and enforced" through arbitration); *Perez Bautista v. Juul Labs, Inc.*, 478 F. Supp. 3d 865, 867 (N.D. Cal. 2020) (covering "disputes over the terms of this Agreement"); *Elijahjuan v. Super. Ct.*, 147 Cal. Rptr. 3d 857, 861 (Cal. Ct. App. 2012) (covering "any dispute that arises with regard to [the Agreements'] application or interpretation"); *Washington v. Freedom of Expression LLC*, No. CV-21-01318-PHX-MTL, 2023 WL 7048942, at *1 (D. Ariz. Sept. 28, 2023) (covering "[a]ny dispute or claim arising under or with respect to this Lease").

And while the scope issue in this case is governed by Arizona law, even California cases that have addressed "relating to" language have compelled arbitration.  *See Khalatian v. Prime Time Shuttle, Inc.*, 188 Cal. Rptr. 3d 113, 118-19 (Cal. Ct. App. 2015) (compelling arbitration and explaining: "The complaint alleges that plaintiff was misclassified as an independent contractor, and was entitled to protections conferred upon employees by the Labor Code, notwithstanding the representations made in the Agreement. . . . The language 'arising out of *or relating to*' as used in the parties' arbitration provision is generally considered a broad provision. . . . Broad arbitration clauses such as this one are consistently interpreted as applying to extracontractual disputes between the contracting parties." (emphasis added)).  Indeed, one of the cases cited by Hodgin specifically notes that its outcome would have been different if the arbitration provision included "relating to" language.  *See Perez Bautista*, 478 F. Supp. 3d at 873 ("Without question, Defendants could have drafted the arbitration provision to cover labor code misclassification causes of action by, for example, expressly providing for arbitration of disputes or claims arising out of, *or related to*, Plaintiffs' employment[.]" (emphasis added)).

The Ninth Circuit similarly has held that arbitration clauses covering claims "relating to" a contract are construed broadly.  *See Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 922 (9th Cir. 2011) ("[W]hen parties intend to include a broad

arbitration provision, they provide for arbitration 'arising out of *or relating to*' the agreement." (emphasis added) (citation omitted)); *Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727, 732 (9th Cir. 2006) (holding a contract "which required arbitration 'if a dispute arises out of *or relates to* this Agreement[]' was broad enough to include a claim for commissions based on quasi-contract or estoppel" (emphasis added)).  Thus, the cases cited by Hodgin do not support his scope argument.

In any event, Arizona law governs the scope issue in this case.  "Arizona has a strong policy interest in enforcing arbitration provisions[.]"  *Henderson v. Moskowitz*, No. CV-24-0215-PR, 2025 WL 3310164, at *3 (Ariz. Nov. 28, 2025) (citations omitted).  Arizona cases instruct that an "arbitration clause should be construed liberally and any doubts as to whether or not the matter in question is subject to arbitration should be resolved in favor of arbitration."  *New Pueblo Constructors, Inc. v. Lake Patagonia Recreation Ass'n*, 467 P.2d 88, 91 (Ariz. Ct. App. 1970).  The language of an arbitration clause must therefore be construed liberally.  *See Sec. Alarm Fin. Enters., L.P. v. Fuller*, 398 P.3d 578, 583 (Ariz. Ct. App. 2017) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, [including] whether the problem at hand is the construction of the contract language itself[.]" (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

Arizona courts interpret an arbitration clause broadly when it includes "relating to" language.  *See*, *e.g.*, *Sun Valley Ranch 308 Ltd. P'ship ex rel. Englewood Props., Inc. v. Robson*, 294 P.3d 125, 130 (Ariz. Ct. App. 2012) ("The arbitration clause at issue here encompasses 'any' controversies or disputes 'aris[ing] out of or relating to' the Partnership Agreement.  It is 'the paradigm of a broad clause.' . . . The duty to arbitrate attaches not only to controversies arising under the Partnership Agreement, but also to disputes 'relating to' that agreement.  'Relating to' is broader than 'arising from.'" (citations omitted)).

Arizona cases further explain that "in order for [a] dispute to be characterized as arising out of or related to the subject matter of the contract, and thus subject to arbitration, it must, at the very least, raise some issue the resolution of which requires a reference to or

construction of some portion of the contract itself." *Dusold v. Porta-John Corp.*, 807 P.2d 526, 530 (Ariz. Ct. App. 1990) (finding personal injury claims not within the scope of the licensing agreement); *see also Sun Valley Ranch*, 294 P.3d at 131 (citing and applying *Dusold* standard).

As explained above, Hodgin's claims will require reference to the Agreement. Any court or arbitrator deciding whether his relationship with Isagenix entitled him to the pay and benefits of California labor law will need to consult the Agreement and Compensation Plan to understand the relationship. And Isagenix will invoke the Agreement in its arguments that Hodgin is not an employee under California law. As in the California cases cited above, Hodgin's misclassification claims will require reference to the Agreement. They therefore are "related to" the Agreement under Arizona law and come within the scope of the Arbitration Provision. *See Sun Valley Ranch*, 294 F.3d at 131-32 (finding that adjudication of unjust enrichment claim required reference to or construction of the parties' contract and that arbitration was therefore required).

### 2.    Hodgin's Related Argument.

Hodgin raises a related argument. The Agreement in this case is between Isagenix International, LLC and Hodgin. *See* Doc. 13-2 at 64. Petitioners Isagenix Worldwide, Inc. and corporate officers Walsh, Davies, and Dunlap are defendants in the California Class Action and petitioners in this case seeking to compel arbitration, but they were not parties to the Agreement. Doc. 41 at 17. Hodgin claims that they cannot, as non-signatories to the Agreement, invoke the Arbitration Provision. *Id.* at 17-18.

"[A] litigant who was not a party to the relevant arbitration agreement may invoke § 3 [of the FAA]," which authorizes courts to compel arbitration, "if the relevant state contract law allows him to enforce the agreement." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009). The Court therefore must look to Arizona law.

The most relevant Arizona case is *Sun Valley Ranch*, 294 P.3d 125. It considered whether defendants who were non-signatories to an arbitration agreement could compel the plaintiff, who was a signatory, to arbitrate his claims against them. Some of the claims

arose directly out of the agreement, but others did not. *Id.* at 129 (claims included breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, fraud and negligent misrepresentation, breach of fiduciary duty, dissolution and accounting, and piercing the corporate veil). The Arizona Court of Appeals held that the non-signatory defendants could compel the signatory plaintiff to arbitrate all claims. *Id.* at 135. The court based this holding on two independent grounds.

Because the plaintiff claimed the defendants were alter egos of the corporation that signed the arbitration agreement, the court held that they could demand arbitration to the same extent as the corporation. *Id.* at 134. Hodgin does not claim the non-signatory petitioners in this case are alter egos of Isagenix International LLC, so this part of *Sun Valley Ranch* does not apply.

As "an additional, independent legal basis" for its decision, *Sun Valley Ranch* held that a non-signatory defendant could compel the signatory plaintiff to arbitrate because "[1] the trier of fact w[ould] be required to consider the Partnership Agreement and the Construction Contract in resolving plaintiffs' claims, and [2] [the non-signatory defendant's] conduct [was] intertwined with that of other defendants who signed the Partnership Agreement." *Id.* at 135. Both of these elements are present here.

First, as discussed above, the trier of fact in this case will be required to consider the Agreement in resolving Hodgin's claims.

Second, the alleged conduct of the non-signatory petitioners is intertwined with that of signatory Isagenix International LLC. The non-signatories are alleged to have engaged in the same conduct as Isagenix International LLC, in the same manner, and under the same policies. *See* Doc. 13-2 at 1-55. Hodgin alleges that signatory Isagenix International LLC and non-signatory Isagenix Worldwide, Inc. "hold themselves out to the public as a single entity, known as Isagenix." *Id.* at 9, ¶ 20. And he alleges that non-signatories Walsh, Davis, and Dunlap, respectively, hold the officer positions of CEO, CFO, and CIO of signatory Isagenix International LLC, and that all three officers engaged in exactly the same conduct as Isagenix International LLC. *Id.* at 9-10, ¶¶ 21-23. The alleged conduct

of the non-signatories thus is "intertwined" with the alleged conduct of signatory Isagenix International LLC.

Because both of the factors identified in *Sun Valley Ranch* are satisfied, the Court concludes that the non-signatory petitioners can invoke the Arbitration Provision and compel signatory Hodgin to arbitrate his claims. Signatory Isagenix International LLC can compel arbitration because it is a party to the Agreement.

**VI.    Isagenix's Request for Fees and Costs.**

Isagenix requests fees and costs associated with this dispute (Doc. 1 at 14), but fails to state what part of the Agreement authorizes such an award. And even if the Agreement or Arizona law permits such an award, the Court denies it as a matter of discretion.

**VII.    Isagenix's Request to Order Arbitration Only of Hodgin's Individual Claims.**

Isagenix asks the Court to order Hodgin to arbitrate his claims solely on an individual basis. Docs. 1 at 8, 40 at 32-33. It notes that the Arbitration Provision contains a class action waiver. Docs. 1 at 8, 13-2 at 78, ¶ 9.10. It cites Supreme Court precedent in support. *See Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 185-89 (2019) (explaining the FAA does not permit a court to compel class arbitration absent clear consent from the parties); *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018) (instructing that mandatory class action waivers in employment-related arbitration agreements are enforceable under the FAA); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) ("[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so."). Hodgin does not respond to this request. *See* Doc. 41. The Court will order Hodgin to arbitrate his individual claims only.

**IT IS ORDERED:**

1.    Hodgin's Motion to Dismiss the Petition (Doc. 35) is **denied.**

2.    The Motion to Compel Arbitration (Doc. 39) is **granted.** The parties shall arbitrate Hodgin's individual claims in accordance with the Arbitration Provision (Doc. 13-2 at 78, ¶ 9.10).

3.    Isagenix's request for attorneys' fees and costs (Doc. 1) is **denied.**

1        4.      The Clerk is directed to terminate this matter.

2        5.      The California Class Action is not pending in this Court, and its status

3    therefore will not be addressed by this judge.

4        Dated this 30th day of December, 2025.

David G. Campbell
Senior United States District Judge